Quinlan *v.* Myers.

---

A. G. QUINLAN, AUDITOR, AND A. J. PARKER, TREASURER OF BROWN COUNTY, *v.* JAS. MYERS FOR HIMSELF AND OTHERS.

Under the act of April 5, 1866, where land-owners, whose lands lying within two miles of the improvement have been reported as benefited, and assessed to pay the expense of the same, suffer the proceeding and work to go on, with knowledge of the facts, until the improvement was substantially finished, they are estopped in equity from enjoining the collection of the assessments so made to pay for the completed improvement.

ERROR to the District Court of Brown county.

A proceeding was originally commenced before the commissioners of Brown county for the improvement of the county road known as the Ripley and Arnheim road, under the act of April 5, 1866. The petition was signed by one hundred and thirty-five persons, and filed June 29, 1866. The viewers and surveyor appointed in pursuance of the act, made report to the September session of the commissioners, giving the names of two hundred and fifty-seven resident land-owners whose lands would be benefited by

the improvement, and after various objections had been disposed of at the same session, the commissioners found that a majority of the land-owners whose lands would be benefited by the improvement had signed the petition, which finding they entered upon their journal, and ordered the improvement to be made.

On the 18th of October, 1866, a petition in error was filed in the court of common pleas by some of the parties opposed to the improvement, and at the March term, 1867, the court of common pleas found that there was no error, and affirmed the proceedings and order of the commissioners. Pending these proceedings in error in the court of common pleas the commissioners took no steps in the case; but on the 5th of August, 1867, they let the work of constructing the improvement to contract at the sum of $57,900. On the 5th of September, 1867, a petition in error to reverse the judgment of the common pleas, above spoken of, was filed in the district court, where the judgment was reversed on the 23d of September, 1869, and the district court ordered the original petition in the court of common pleas to be dismissed. The contractors went to work August 10th, and by the 21st of September following had done work on the improvement of the value of about $10,000.

On the 21st of September, 1867, Walker Ellis and forty-four others, who are named, and " many others," commenced an action in the court of common pleas against David Dixon and a number of others by name, including the contractors, and obtained an injunction restraining the contractors and others from constructing the road in pursuance of the order of the county commissioners. The petition in this case alleged, among other things, as grounds for the restraining order, that a majority of the resident land-owners had not signed the petition for the improvement when the order therefor was made, and that all the lands within two miles of the line of the road that would be benefited by the improvement had not been returned by the viewers and surveyor for assessment to pay the expense thereof.

On the first hearing of this case in the court of common pleas the injunction was made perpetual. This decree was reversed by the district court on error, and cause remanded.

On the second hearing in the court of common pleas the petition was dismissed, and the case taken to the district court on appeal by the plaintiffs, where the case was finally heard December 17, 1869, and determined in favor of defendants, and the injunction was dissolved and the petition dismissed.

From the filing of the petition in September, 1867, until the final determination of the case in December, 1869, everything connected with the improvement remained in *statu quo.* On the 5th of January, 1870, the county commissioners ordered the estimated expense of the improvement to be apportioned upon the lands reported by the viewers and surveyor, " *and all other lands within two miles of the improvement which were benefited thereby.*" The committee appointed for that purpose made report of their apportionment May 9, 1870. This was the first apportionment made in the case. It was excepted to and set aside. A new committee was appointed for the same purpose, who made report of their proceedings and apportionment, which was approved and confirmed October 28, 1870. Among other things, this committee reported that the lands of two hundred and nine land-owners within two miles of the improvement, in addition to the two hundred and fifty-seven reported by the viewers and surveyor, would be benefited by the improvement, and ought to be assessed to pay the expense of the same, and they assessed the same accordingly ; thus assessing the lands of four hundred and sixty-six persons instead of two hundred and fifty-seven, as originally reported.

In April, 1870, the contractors recommenced work upon the improvement, and before the close of that year had substantially completed the same.

In 1870 two hundred and four persons paid the amounts assessed against their lands to pay the expense of the improvement.

Quinlan v. Myers.

On the 29th of May, 1871, this action was commenced by James Myers in behalf, of himself and other resident land-holders of the county, whose lands have been assessed, "to the number of two hundred or thereabouts," against the auditor and treasurer of the county, to restrain the collection of the assessments on their respective lands to pay for said improvements. Among other grounds for an injunction it was alleged in the petition that a majority of the resident land-owners, etc., had not signed the petition to the commissioners at the time the improvement was ordered in 1866. A temporary injunction was allowed. The defendants below answered: 1. Denying certain allegations of the petition specially.

The second defense is as follows:

"The defendants, further answering, say that on the 21st day of September, 1867, Walker Ellis and forty-four other persons, for themselves and many others, commenced an action in the Court of Common Pleas of Brown county, Ohio, against the then acting commissioners of said county, and many others, representing the petitioners of said road improvement, the object of which was to have the order of said county commissioners requiring said improvement to be made to be declared a nullity, and further proceedings pursuant thereto perpetually enjoined, for the very same cause as that set forth in the plaintiff's petition. Upon the issues of fact joined in said action, said court rendered judgment, and an appeal was thereupon taken to the district court of said county. Said district court, at a special term thereof, legally holden on the 17th day of December, A. D. 1869, tried said action upon said issue and found on the merits against the plaintiffs in said action, and that said county commissioners had jurisdiction to make said order for said improvement, and thereupon, on said 17th day of December, A. D. 1869, adjudged and decreed that said petition be dismissed. Said judgment and decree remains in full force and unreversed. The plaintiffs and defendants in said action claimed to and actually did represent the rights and interests of the plaintiff in this

action, and all those having a common interest with him and whom he represents, except the two hundred and nine resident land-owners who have been by the county commissioners added to the list of persons to be assessed to pay for said improvement, since the order directing the same to be made was first entered upon their journals. There is another action now pending in the district court of this county, wherein said two hundred and nine persons seek the same relief for the same, among other causes, as that claimed by the plaintiff for himself and those for whom he brings this action."

The third defense was, in substance, that the plaintiff, by his laches in not applying for an injunction till the improvement·was completed, except as to a small amount of work, not exceeding one thousand dollars in value, was thereby estopped.

The reply to the second defense was: 1. *Nul tiel record;* 2. That the plaintiff was not a party to the Walker Ellis suit.

The reply to the third defense is as follows:

"The plaintiff, for reply to the third ground of defense in the defendants' amended answer set forth, says that as soon as the fact became publicly known that said Breslin and Moore had made a contract with the commissioners of Brown county, Ohio, for the construction of said improvement, and before they had made any preparation for the performance of said contract, or had incurred any expense by reason of having taken the same, they were notified by several of the parties interested as plaintiffs in this suit, that as soon as counsel could be employed, and the necessary arrangements made therefor, suit would be brought for the purpose of annulling said contract and perpetually enjoining the construction of said improvement, and that as, soon as the necessary preparations therefor could be made, and counsel employed, such a suit was brought in the proper court within a few weeks after the said Breslin and Moore commenced work under said contract, to which the said Breslin and Moore were parties defendant, and in

which they were regularly served with process before they had constructed but a small part of said improvement. Plaintiff further says that prior to the making of said contract a petition in error had been filed in the proper court to reverse and annul the order of the said board of commissioners directing the construction of said improvement, and that said petition had been dismissed, and that a petition in error to reverse said order of dismissal was pending in this court at the time said contract was made, the said Breslin and Moore well knowing of the same. Plaintiff says that ever since the making of said order, until the commencement of this suit, parties returned for assessment to pay for the construction of said improvement, have been diligently and continuously prosecuting legal remedies to prevent the construction of said improvement."

There was a decree for the defendants in the court of common pleas. The plaintiffs took the case to the district court on appeal. The court found the issues taken upon the second defense for the plaintiffs on full hearing. The defendants excepted to this finding, and took a bill of exceptions embodying all the testimony on these issues.

The issues made by the first and third defenses and reply, were, by consent of parties, sent to a referee for trial, who was ordered to report to the court the testimony taken by him, and the facts found by him from the testimony so taken, and also the facts agreed upon by the parties.

The referee found, as facts, that there were only 121 legal petitioners for the road in 1866, and that the number of land-owners whose lands were then returned for assessment by the viewers and surveyor was 249. And from this data further found that on the 6th of September, 1866, a majority, etc., had not signed the petition, and that the doings of the commissioners in the matter of the improvement " were unauthorized by law, and in violation of law, and are therefore null and void."

The referee further found that the commissioners had issued to the contractors for the improvement, bonds to the

amount of $58,584.44, part of which had been paid out by them to their subcontractors.

The referee further found, adjudged, and held that "the plaintiffs and those for whom the suit is prosecuted, are not estopped in law from prosecuting this action," and adjudged and decreed that the injunction be made perpetual.

The report of the referee was excepted to on several grounds, among which was this : "That the referee erred in not finding for the defendants on their third ground of defense." On motion of the plaintiffs below, the exceptions to the referee's report were stricken from the files.

Other motions were interposed by the defendants below, and overruled, and a decree entered approving and confirming the report and proceedings of the referee, and perpetually enjoining the auditor and treasurer from collecting the assessments made upon the lands of the *plaintiffs mentioned in the petition*, and in schedule "B" and "C" (which contain the names of all assessed, numbering 466) thereto attached, except certain persons who are not parties to this action, "and who are now prosecuting another suit to restrain and enjoin the collection of said assessments as to them, to wit "—here follows the names of 115 persons "who have declined to be made parties to this suit."

The defendants made a motion for a new trial, which was overruled.

Among the errors assigned here are the following: 1. The district court erred in not finding in favor of the defendants below on the second defense and the reply thereto, and in finding said issue for the plaintiffs ; 2. In striking the exceptions to the referee's report from the files ; 3. In confirming the report of the referee, and entering a final judgment in favor of the plaintiff below.

*David Thomas*, and *Devore, Thompson & Fite*, for plaintiffs in error.

*White & Waters* and *Loudon & Young*, for defendants in error.

GILMORE, J. In the view that we take of the case, we will first ascertain from the record the nature and extent of the claim of James Myers, the plaintiff below, and also what persons, or rather what class of persons, he represented in bringing the suit for himself and two hundred others. These being ascertained, we will, in the second place, inquire whether James Myers is estopped by his acquiescence or laches from denying his liability to pay the assessments made on his lands to pay for the completed improvements, and if so, whether those whom he represented are likewise estopped.

James Myers, the plaintiff below, was one of the persons named in the original report of the viewers and surveyor, made in September, 1866, as a land-owner whose lands would be benefited by the improvement. The whole number returned for assessment in this report was 257, and, for convenience, these may be denominated the first class. For the present, passing over causes which occasioned delay in letting the improvement to contract, and suspending work on it after it was let to contract, we come to the order of the commissioners, made on the 5th of January, 1870, appointing a committee to apportion the estimated expense of the improvement upon the lands reported by the viewers, *and all other lands within two miles of the improvement which were benefited thereby.* The report of the first committee was set aside, and another committee for the same purpose appointed, whose report was made and confirmed in October, 1870. This report contains the names of 209 land-owners not previously returned, whose lands are within two miles of the improvement, and which, in the opinion of the committee, "will be benefited thereby," and ought to be (and were) assessed to pay the estimated expense of the improvement. These 209 land-owners constituted the second class.

It will be seen at once that the legal rights and liability of these two classes, at the time the suit was commenced, were not necessarily the same.

The rights and liabilities of the first class depended upon

the provisions of the act of April 5, 1866, while the rights and liabilities of the second class, to some extent, depended upon section 5 of the road improvement act as amended May 9, 1868 (S. & S. 675), the provisions of which were applicable to pending proceedings. Sec. (50), act of March 13, 1868 (S. & S. 673).

The suit was brought by Myers under the 37th section of the code of civil procedure, which provides: " When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In his petition he avers that he is a landholder, resident of the county, and that he " brings this suit on his own behalf, and on behalf of other resident landholders whose lands have been assessed, to the number of 200, or thereabouts; that the number of resident landholders *having an interest in this suit and affected by its results* amounts to 466."

It is plain that the suit was brought on the idea that the two classes were interested in common, and on this ground Myers assumed to represent 200 of them, without distinction; and the final decree of the court shows that he was permitted to represent both classes. It is shown above that the two classes did not necessarily have a common interest in the subject-matter of the suit; and in the absence of a statement of facts showing that there existed some other ground for permitting one to sue in his own name in behalf of many others, Myers could only sue in his own name in this case, in behalf of himself and others of his own class, viz., the first class, and of these, only those named as plaintiffs, or served with process as defendants, would necessarily be bound by the decree.

Although the testimony shows that the viewers and surveyor returned two parcels of land belonging to Myers as liable to assessment, and that the last apportioning committee returned additional lands belonging to him for assess-

ment, yet these facts are not mentioned in the pleadings nor referee's report.

If Myers had claimed to represent both classes, by reason of these facts, he should have set them out, and founded his claims upon them, so that the question of his right to do so might have been raised and determined. But the question is settled by allegations in the last two clauses of the second defense in this case, which defense sets up the proceedings and decree in the Walker Ellis suit, in bar to the right of Myers to maintain this action. The allegations alluded to are as follows:

" The plaintiffs and defendants in said action claimed to, and actually did represent the rights and interests of the plaintiff in this action, and all those having a common interest with him, and whom he represents, except the 209 resident land-owners, who have been by the county commissioners added to the list of persons to be assessed to pay for said improvement, since the order directing the same to be made was first entered upon their journals. There is another action now pending in the district court of this county, wherein said 209 persons seek the same relief for the same, among other causes, as that claimed by the plaintiff for himself and those for whom he brings this action."

The distinction between the two classes is here clearly drawn. The reply to this defense did not deny any of the allegations above quoted, and hence they are admitted to be true. If the 209 constituting the second class were separately seeking the same relief as Myers, on substantially the same ground, in an action then pending, surely Myers had no right to claim to represent them, under the very general allegations of his petition, and we find that he could only have been representing landholders of the first class. The question of bar or estoppel by record, as raised by the issues on the second defense, need not be discussed, as the decision is placed on another ground. It is proper to say, however, that Myers is not named, either as a party plaintiff or defendant in the Ellis suit, and that by his reply to the second defense he denies that he was a party thereto.

2. Having determined that Myers must be considered as having brought suit as a landholder of the first class, viz., one of the 257 whose lands were originally reported for assessment by the viewers and surveyor, and that he only sued in behalf of himself and others of the same class, the remaining question arises under the third defense, which is, in substance, that the plaintiff, who had knowledge of the facts, by not applying for an injunction until the improvement was completed, except as to a small amount of work, not exceeding in value $1,000, is now estopped from resisting the payment of the assessments made to pay for the completed improvement.

It is further to be observed that, under the act of May 13, 1868 (S. & S. 677), in any action brought to enjoin the collection of any assessment levied, etc., the court may, if there be manifest error in the proceedings, affecting the rights of the plaintiff in such action, set the same aside as to him, without affecting the rights or liabilities of the other parties in interest.

Relief can, therefore, only be granted to those who ask it, or, in other words, those who are named as plaintiffs in the petition. In the absence of this statutory provision, however, upon general principles, if the party *named* as plaintiff, who sues in behalf of himself and others, fails in his suit, those whom he represents must also fail, for the rights of those represented can not rise higher than those of the party named as plaintiff.

The inquiry is therefore narrowed down to this : Was the issue as made upon the third defense (estoppel) properly found and determined by the referee ? The finding of the referee is as follows : " 25th. I find from the facts so found as aforesaid, and I adjudge and hold, that (said road being an entirety) the plaintiffs, and those for whom this suit is prosecuted, *are not estopped in law from prosecuting this action*."

It is supposed that the words in parentheses are intended to mean that no distinction could be drawn between the two classes of land-owners previously spoken of, inasmuch

as they were all returned in the same apportionment. If this is the meaning intended, it has been previously shown that the referee erred in this respect. But passing this, let us examine the correctness of the general finding, that neither the plaintiff nor any of those for whom he sues are estopped.

The viewers returned James Myers, by name, as a landowner, and reported certain lands belonging to him for assessment. The report was filed in September, 1866, and, I repeat, that there is nothing in the pleadings or findings of the referee to show that additional lands of his have been subsequently returned for assessment.

Myers, then, had an election either to abide by and acquiesce in the report of the viewers, or to institute legal proceedings to set it aside. He elected to acquiesce. The improvement was let to contract, and the contractors commenced work upon it in August, 1867, of which Myers had notice. Again, he had an election either to commence proceedings to enjoin work upon the improvement or to acquiesce in what was being done. He chose the latter. The work was suspended from September, 1867 (at which time one-sixth of the work had been done), till April, 1870, when the contractors again commenced work on the improvement, of which Myers had notice, and again he elected to let the work progress without objection on his part. The work was substantially completed in the year 1870, work of the value of about $1,000 only remaining undone. After the work was thus substantially completed, and the benefits of the improvement thus obtained, Myers for the first time, on the 29th of May, 1871, made application for an injunction, not to restrain the commissioners or the contractors from making the improvement, but to restrain the auditor and treasurer from collecting the assessments to pay for the improvement after it was made.

In equity, wherever the rights of other parties have intervened by reason of a man's conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence, or even laches, was based on a

knowledge of the facts, he will be deemed to have made an effectual election; and he will not be permitted to disturb the state of things, whatever may have been his rights at first. Bigelow on Estoppel, 508; 33 Iowa, 278.

Here, Myers had acquiesced for nearly five years, during which time, and it may be said by reason of such acquiescence, the rights of contractors and subcontractors to be reimbursed for labor and materials employed in making an improvement beneficial to the plaintiff had intervened, or the county had become bound for the same by issuing its bonds to the contractors. There is no pretense that there was any fraud or concealment on the part of the commissioners, contractors, or others in making the improvement; but the principal ground upon which Myers relies for an injunction is, that the commissioners had not jurisdiction to make the order for the improvement. After an acquiescence of nearly five years, during which the work was substantially completed, on every consideration of justice and equity, Myers ought now to be estopped from denying his liability to pay his assessments for the completed improvement, and this without reference to whether the commissioners had jurisdiction to order the improvement or not.

But Myers undertakes, by his reply to the third defense, to break the effect of his long acquiescence, by setting up the fact that prior to the making of the contract for the improvement, a petition in error had been filed in the proper court to reverse the order of the commissioners ordering the improvement to be made, etc. But he does not say what the judgment of the court was; but the record shows that the common pleas court found no error, and affirmed the order of the commissioners, and that the contract was made while this judgment of affirmance was in force. The reply to this defense further states, in substance, that as soon as it became publicly known that contractors had taken a contract for making the improvement, the contractors were notified that a suit to annul the contract would shortly be commenced, and that such a suit was brought within a few weeks after the contractors com-

menced work under the contract. But the reply does not state that Myers was a party plaintiff or defendant in that suit, nor is the final result of the litigation stated. The record shows that this was the Walker Ellis suit, which was set up as a bar by the second defense, and in reply to which Myers averred that he was not a party to that suit.

This is an attempt to defeat the bar on the one hand, on the ground of his not having been a party to the suit, and on the other avoiding the effect of his acquiescence, on the ground of the pendency of the same suit. This he can not be permitted to do. He is estopped from claiming rights so repugnant to each other.

There is nothing shown in the record that shields Myers from the consequences of his election and long acquiescence in what was being done toward the construction of the improvement, and we find that he is now estopped from denying his liability to pay the assessments in question, and with him all those of the first class, whom he had authority to represent, are likewise estopped.

The finding and decree of the district court is reversed, the injunction dissolved, and the petition dismissed.

*Judgment accordingly.*