Williams, J.
'Whether there is error in the judgments requiring their reversal, depends' largely upon the effect to be given to the ordinance of November 16, 1874. So much of that ordinance as is important is given in the statement of the case. The court of common pleas found the defendant accepted the ordinance, and held that it constituted a contract between the parties, under which the plaintiff might rightfully determine the kind of pavement that should be constructed and maintained on the street, including that part within the rails of the defendant’s roadway, during the period named in the ordinance. That it might do so, is sufficiently clear. There was no intention on the part of the city, in the passage of the ordinance, to surrender the powers conferred on it by law, or abridge their reasonable and proper exercise. It is equally clear that one of the material-and important things intended to be secured to the city by the ordinance, as part of the consideration for the privileges thereby granted the defendant, was the continuing obligation of the defendant, to make and keep in repair, during its enjoyment of the grant, those portions of the street occupied by its railway. That obligation is, by the terms of the ordinance, imposed upon the defendant, which it assumed by accepting the privileges thereby conferred. A mode therein provided of enforcing that obligation is, that the *104 plaintiff, after notice, may do the 'work the defendant so bound itself to do, and recover its cost from the defendant. "Whether this is the exclusive mode of enforcing the defendant’s obligation may admit of doubt; but is unnecessary to be now determined.
The court of common pleas found that notice was not given the defendant to make the improvement between the rails of its roadway until the plaintiff had contracted with Hastings & Beeson to improve the entire width of the street, without reserving in the contract, or otherwise obtaining from the contractors, permission to the defendant to make that part required by the notice, and held that such notice was not sufficient, although no part of the work the defendant was so required to do had been done; but that to make the defendant liable the notice should have been given it a reasonable time before the city contracted for doing the work. Upon 'this ground alone it was adjudged the plaintiff could not maintain its action. This was error.
Assuming that the ordinance constitutes the contract between the parties, and that by its terms, the right in the first instance is given the defendant to make the improvement and repairs referred to, and that the plaintiff is authorized to make them and recover their cost, only after the notice therein provided for, it does not follow as a necessary or legal consequence, that the contracting with another therefor, before notice, made compliance therewith impracticable, or otherwise relieved the defendant of its obligation to do the work required. If the ordinance conferred upon the defendant the rights claimed, no subsequent contract of the city could extinguish or impair them. The contractors could not, in virtue of the contract, any more than the city, in any way interfere with them. They were as effectually saved and secured to the defendant as if expressly reserved in such contract.
So long as the improvement and repairs which the defendant, by accepting the ordinance, bound itself to make, remained unmade, its duty continued to make them when notified to do so ; and it was no concern of the defendant what contract the city had made with another, or what liability it had thereby incurred. *105 There is nothing in the ordinance, or in the nature of the defendant's obligation, that required the notice to be given it before the city entered into a contract for the work; it is sufficient, if after the notice, opportunity be given the defendant to perform the work. No particular form or manner of notice is necessary. It may be shown by circumstances, which properly apprise the defendant of the city's purpose, and call for the action of the defendant in that behalf. The fact, that before notice to the defendant, the city had let the contract for the improvement of the entire width of the street, would at most be but evidence tending to show an intention at that time, ex gratia, to relieve the defendant from the construction of any part of it. But such intention might be abandoned any time while that part of the work within the defendant's roadway remained unperformed, and the defendant be called upon to do it. The passage of the resolution by the city council, before letting the contract, requiring the defendant to perform such work, and serving a copy on the defendant, after the contract was let, sufficiently acquainted the defendant that no such intention ever existed or was abandoned. It appears, both from the finding of facts and the evidence, that the copy of the resolution was served before any part of the work required of the defendant was done. There is no finding, nor any evidence tending to show, that the contractors prevented, or attempted to pi’cvent, the defendant from complying with the resolution. If they had done so, another question might arise. It is a mistake to suppose that the mere letting of the contract and commencing the work, somewhere in the street, prevented the defendant from complying with the requirements of the resolution, or discharged the obligation of the defendant to do the work required.
If, however, the notice failed, in time, to meet the strict demands of the ordinance, the plaintiff nevertheless had a substantial and satisfactory ground of recovery as shown by the record. There is no finding, or evidence tending to show, that the city by letting the contract, or otherwise, intended to release the defendant from its obligation under the ordinance, or have that part of the work done for the defendant, as a mere gratuity. Quite the *106 contrary appears from the evidence. 'The passage and service of the resolution indicate, that the plaintiff expected the defendant to perforin the work required, or pay for it, if it did not; and it is difficult to see how the defendant could have had any different understanding, or expectation. It is evident the delay in service of the resolution, was an oversight or neglect of the city solicitor. Besides, it is shown by the evidence that the general superintendent and manager had the sole possession and control of the road, under an agreement with the directors that he was to run it, pay all charges and keep all the proceeds ; and, as he testified, had entire and unlimited authority, control and care in the management of the road, its business ■and affairs. The copy of the resolution was served on him before any work was done, except some excavating in the street. No attempt was made to comply with it, nor any intimation given to the plaintiff or contractors of an intention to do so; nor any objection interposed to the j^erformance of any of the work by the contractors, although he saw it from its commencement to its completion, and he,, or his agent, was along the line of the railway almost every day superintending the re-laying of the track, to accommodate it to the new improvement; and as fast as the track was laid cars were run over the same. He knew the city expected the defendant to do its part of the work or pay for it, and said, while the work was progressing, he would be liable, and would do what was right.
The defendant had an election to assert its right and perform its duty under the ordinance, or permit the contractors to do the work required of it. With full knowledge of all the circumstances it chose the latter, and received and accepted the beneficial results of its choice. This should place it in no better position than if it had chosen the former. If it had done so, it would have incurred the expense of the work, and thus received its benefits. It has the benefits at the expense of the city, and is bound to pay the reasonable outlay made in its behalf. It is estopped from controverting its liability to do SO;
*107 In City of New Haven v. Fairhaven and Westville R. Co., 38 Conn. 422, it appeared that the defendant’s charter required it to keep that portion of the street between its rails, and two feet on either side, in repair. The plaintiff improved the street, and assessed upon the defendant’s road, that portion of the cost, and sued for the same. It was contended by the defendant that its charter gave it the right to make the repairs in its own way; and the city could not deprive it of this privilege, or recover their cost. The court thus disposes of that claim. “ The defendant suffered the city to go forward and incur the expense, with full knowledge of the proceeding, and without objection at the time. The defendant must have known that the improvement would largely benefit it in the matter of repairs; that the proceeding was under the statute, and consequently at the expense, in part at least, of the parties benefited. There was no reason to suppose that the city was doing the work of the defendant at its own expense, or at the expense of other parties. The presumption therefore is, in the absence of any finding to the contrary, not only that the defendant consented to the making of the improvement by the city, but that there was an implied understanding that the defendant was to bear its fair proportion of the'expense. We think, therefore, that the defendant should be estopped from setting up this claim.”
In Bishop on Contracts, section 217, the author says it may be stated as a sound rule, supported by authority, that “any benefit, of a sort commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers on another who accepts it, is, in the absence of any agreement in fact, an adequate foundation for the law’s created promise to render back its value.”
And “ in equity whenever the rights of other parties have intervened, by reason of a man’s conduct or acquiescence in a state of things, about which he had an election, and his conduct or acquiescence, or even laches, was based on a knowledge of the facts, he will be deemed to have made an effectual election; and he will not be permitted to disturb the state of things, whatever may have been his rights at first.” *108 Quinlan v. Myers, 29 Ohio St. 511. “Estoppels in pais are called equitable estoppels, not because their recognition is peculiar to equitable tribunals, but because they arise upon facts which render their application in the protection of rights, equitable and just. Courts of equity recognize them in cases of equitable cognizance; but the courts of common law just as readily and freely; and it is never necessary to go into equity for the mere purpose of obtaining the benefit of an equitable estoppel, when the case is not otherwise of equitable jurisdiction.” Barnard v. German American Seminary, 49 Mich. 444.
The judgments of the district court and court of common pleas are reversed, and the court of common pleas .having made no finding in regard to the cost of the work in question, the cause is remanded to that court for trial upon that issue.