Mason v. Commissioners.


## ASSESSMENTS—COUNTIES—DRAINS AND ·DITCHES.

[Fulton (6th) Circuit Court, 1907.]

Haynes, Parker and Wildman, JJ.

JOHN R. MASON ET AL. V. FULTON CO. (COMRS.) ET AL.

1. POWER OF COMMISSIONERS IN DITCH PROCEEDINGS.
    The county commissioners have power to improve a watercourse partly nat-
    ural and partly artificial, by deepening, widening, straightening and oth-
    erwise improving the same. Distinguishing *Greene Co. (Comrs.)* v. *Har-
    bine*, 74 Ohio St. 318 [78 N. E. Rep. 521].
    [For other cases in point, see 1 Supp. Dig., "Drains and Ditches," § 1.—Ed.]

·2. WATERCOURSE ESTABLISHED BY PRESCRIPTION.
    Although Rev. Stat. 4500 (Lan. 7681) provides that the uninterrupted use of
    an established ditch for seven years constitutes a natural watercourse,
    notwithstanding errors, defects or irregularities in the location, establish-
    ment or construction of the same, it was not designed to take away rights
    which the public had acquired over it as a ditch or drain.
    [For other cases in point, see 3 Cyc. Dig., "Easements," §§ 64-65.—Ed.]

:3. COMMISSIONERS MAY LOCATE DITCH IN VALLEY OF LIVING STREAM.
    The county commissioners may locate a ditch substantially along the line
    of the channel of or adjacent to, ·or in the valley of, a living stream or
    watercourse, though they have  no power to convert a living stream of
    water into a ditch by proceedings for the location and construction of a
    ditch.
    [For other cases in point, see 1 Supp. Dig., "Drains and Ditches," § 1.—Ed.]

·4. PLAINTIFF IN AN ACTION TO ENJOIN A DITCH ASSESSMENT ESTOPPED, ·WHEN.
    Plaintiffs are estopped to question the right of the commissioners to estab-
    lish and maintain a ditch or watercourse, which has existed for a great
    many years, and which has been improved, upon severál occasions, by
    proceedings instituted by the county commissioners. and where the plain-
    tiffs have in some of these proceedings paid the assessments without ob-
    jection.
    [For other cases in point, see 4 Cyc. Dig., "Estoppel," §§ 521-530.—Ed.]

:5. APPORTIONMENT OF EXPENSE IN A DITCH IMPROVEMENT.
    Where plaintiffs, by reason of artificial improvements on their own lands
    above, have helped to make it necessary for the protection of the lands
    below to make contemplated improvements in a ditch or watercourse,
    they should contribute to their payment.
    [For other cases in point, see 3 Cyc. Dig., "Drains and Ditches," §§ 165-170.—
Ed.]

6. FINDING OF COMMISSIONERS IN DITCH IMPROVEMENT FINAL, WHEN.
    Unless injustice is apparent, in the assessment of the expense incurred in
    ditch improvement proceedings, a court of equity will not disturb the
    findings of the county commissioners.
    [For other cases in point, see 3 Cyc. Dig., "Drains and Ditches," §§ 76-79.—
Ed.]

7. DEFECTS IN DITCH IMPROVEMENT PROCEEDINGS NOT FATAL, WHEN.
    Under Rev. Stat. 4490, 4491 (Lan. 7674, 7675), the failure of the commis-
    sioners to find affirmatively and enter upon their docket that the ditch

improvement is conducive to the public health, convenience and welfare, is an irregularity that may be disregarded or cured, and is not necessarily fatal to the validity of the proceedings.

[Syllabus approved by the court.]

MOTION to dismiss action, made at close of evidence on behalf of plaintiff.

**C. L. Newcomer,** for plaintiffs.

**Handy & Wolf,** for defendants.

## WILDMAN, J.

I approach the consideration of the case, the title of which I have just given, with considerable misgiving and with an appreciation of the great importance of the issues involved and the magnitude of the investigation that would be required to apprise the court of the precise character and condition of every tract of land involved in the inquiry, with a view to the ascertainment of the equity or inequity of the assessments made on such lands.

We have before us a proceeding to enjoin the collection of assessments for an improvement under the county ditch law. I will not go into any elaborate recital of the facts which have been disclosed to us by the evidence. The petition is brought by one John R. Mason in behalf of himself and some three hundred or more others who, he informs us, are interested in like manner with himself in the restraining of the collection of the assessments upon the lands assessed for said improvement.

The ditch or watercourse sought to be enlarged, widened and deepened by the proceedings of the county commissioners seems to be of a somewhat double character. The proceedings are described as the improvement of what is known as "the Bean Creek Improvement" and also "Chesterfield No. 2." The claimed watercourse extends from a point in the northerly line of the county of Fulton southwesterly until it strikes the line of Williams county, and its entire extent is said to be some twenty-five miles. It is supposed to drain a large section of territory the precise acreage of which it is not essential to state, but it runs well up into the thousands, something over 75,000 acres, I believe, if we consider the land which the persons favoring the improvement claim to be benefited by it.

The first question which confronts us—not the one first stated in argument or brief, but the one which seems of vital consequence to the whole inquiry—is as to the jurisdictional power of the county commissioners to make the sort of improvement which is described in this proceeding and to make it by the procedure which has been adopted. We

are confronted with a recent decision of the Supreme Court of this state, that of *Greene Co. (Comrs.)* v. *Harbine,* 74 Ohio St. 318 [78 N. E. Rep. 521], which for the first time, so far as we are aware, attempts to add to the statutory definition of the word "watercourse," as used in the county ditch law. The statute, Rev. Stat. 4447 (Lan. 7628), provides, substantially, for two things, which will be noted as I read the section:

"The commissioners of any county, at any regular or called session, may, in the manner provided in this chapter, when the same is necessary to drain any lots, lands, public or corporate road or railroad, and will be conducive to public health, convenience, or welfare, cause to be located and constructed, straightened, widened, altered, deepened, boxed, or tiled, any ditch, drain, or watercourse, or box or tile any portion thereof."

That is the first sort of improvement to which I referred, and the provision following the word "or" which I now read constitutes the second kind of improvement to which I have made reference—

"Or cause the channel of all or any part of any river, creek, or run, within such county, to be improved by straightening, widening, deepening, or changing the same, or by removing from adjacent lands any timber, brush, trees, or other substance liable to form obstruction therein."

The first part of the section provides for the improving of a ditch or drain, the second part for the improving of a natural watercourse comprised within the terms "river, creek or run."

In Rev. Stat. 4448 (Lan. 7629) we have the statutory definition of the word "ditch" as follows:

"The word 'ditch' as used in this chapter shall be held to include a drain or watercourse."

The Supreme Court, having this section before it, after discussion by counsel for the litigants in the case cited, gave a construction of its own, which I read in the syllabus, on page 318:

"The word 'watercourse' as used in the county ditch law, Title 6, Chap. 1, Rev. Stat., is synonymous with the word 'drain,' and the county commissioners are without authority to convert a living stream of water into a ditch by proceedings for the locating and constructing of a ditch."

In the case before the Supreme Court, it was contended by the owner of a certain milldam that the object of a contemplated improvement of a stream by the county commissioners was to destroy his milldam and to do it without recourse to another section of our statutes which I need not stop to read, under which the county commissioners

are authorized to proceed for the removal of a milldam from a water-course. This was denied by the defendants in the case, but it was not denied that the stream in which the milldam was maintained was a natural watercourse; that it was such a stream as would not come under the ordinary definition of the term ditch. It was contended, however, by counsel who were seeking to collect the assessment that the statutory definition which I have read in Rev. Stat. 4448 (Lan. 7629) so enlarged the term "ditch" as to make it include not only a watercourse which had been constructed by artificial means, but also a natural stream such as has the character of a river. The Supreme Court, however, did not adopt this contention and came to the conclusion which is embodied in the syllabus which I have read. And this latest announcement of the Supreme Court upon the subject would seem to dispose of the question of the present power of the. county commissioners to change a living stream having a natural flow of water within banks, such as we know to be a river, or creek, or brook, into a ditch or drain.

There is no qualification, however, in this decision, of the power of the commissioners to remove obstructions from a river or cause the channel of a river, creek or run to be improved in the other ways speci-fied in Rev. Stat. 4447 (Lan. 7628), to wit, by widening, deepening or changing the same.

The petition before us and upon which the plaintiff bases his claims to equitable relief on behalf of himself and other persons affected, re-cites that the petition which was theretofore filed with the commissioners prayed for the deepening, widening, straightening and otherwise im-proving a certain watercourse, partly natural and partly artificial, known as Bean Creek. with its branches in said county.

Without tarrying long upon this particular branch of the case, im-portant as it is, we have arrived at a conclusion from an examination of the evidence offered on behalf of the plaintiff. I should have said, per-haps, in my statement of the present status of the case, that at the close of the plaintiff's evidence, a motion was made to us by the defendants for a judgment upon the ground that the evidence offered by the plain-tiff would not justify the equitable interposition of the court. The evi-dence clearly discloses that from a very early period in the history of this county a watercourse has been maintained along the greater part of the line of the proposed improvement. It has perhaps been extended from time to time, and it has certainly been improved at different times in the course of years, and assessments have been made upon property owners near and remote for the cost of such improvements. Up to the present time, so far as we are informed, no contention has been made

Mason v. Commissioners.

by anyone that this had not become a drain or watercourse subject to the jurisdiction of the county commissioners under the statutes as to ditches, drains and watercourses.

Now, we have one section of the ditch law which may have some incidental bearing upon the effect of this long recognition of the so-called Bean Creek Improvement as a county ditch. It is Rev .Stat. 4500 (Lan. 7681). I read it:

"When a ditch has been established and constructed for the public health, convenience, or welfare, either by private agreement between two or more individuals, whose real property has been affected thereby, or by a board of township trustees, or by a board of county commissioners, and such ditch has been used for the purpose of drainage of private lands or public highways for seven years or more, without obstruction or interruption, the same shall be, and hereby is declared to be, a public watercourse, notwithstanding errors, defects, or irregularities in the location, establishment, or construction of the same, and such public watercourse shall, in all respects, be considered and treated as a natural watercourse, and the public shall have and possess, in and to such public watercourse, the same rights and privileges which pertain and relate to natural watercourses."

The last clauses of this section are somewhat peculiar and at first reading might seem to throw some obscurity upon the construction of the section. It can hardly be contended, however, that it was the intention of the legislators that after the uninterrupted use of an established ditch for seven years, even if it had been erroneously or irregularly located, it should become a public watercourse and that thereupon the commissioners should lose their jurisdiction over it to improve by deepening or enlarging or straightening its channel. We think that this is rather a statutory limitation against claims of error and irregularity in the original construction, and that, although the section says that it shall be treated as a natural watercourse and the public shall have and possess in and to it the same rights and privileges which pertain and relate to natural watercourses, it was not designed to take away any rights which the public had acquired over it as a ditch or drain.

Now, the principal error, which it is claimed is a jurisdictional one, is substantially this, although not stated, perhaps, in precisely these words, that the county commissioners in the original location of this ditch and in their location of the contemplated improvement, are placing it along the line of the channel of a living stream or watercourse, and that that sort of a location is one which the law will not permit, and it is contended that the decision in *Greene Co. (Comrs.)* v.

Fulton County.

*Harbine, supra,* substantially so asserts. The Harbine case says that the county commissioners are without authority to convert a living stream of water into a ditch by proceedings for the locating and constructing of a ditch. It does not say that the commissioners may not locate a ditch substantially along the line of one, or adjacent to, or in the valley of, a living stream or watercourse. But if they could or not, the error would be one in locating the ditch where they had no jurisdictional or proper power to locate it. But here we have a construction which in the petition is described as partly natural and partly artificial, and which has existed for I know not how many years, but certainly a good many, and which has been improved upon several different occasions by proceedings instituted before the county commissioners. In some of these proceedings some of the very lands now sought to be assessed and owned or managed by some of these claimants said to be represented by Mr. Mason, the plaintiff, were assessed to pay for those former improvements, and no objection seems to have been raised.

We think that, applying the general principles as to the acquiring of easements by prescription, and also the principles embodied in Rev. Stat. 4500 (Lan. 7681), it is too late now to question the right of the commissioners to the establishment and maintenance of what is known as the Bean Creek Improvement. That rights are acquired not only by individuals by long use, but that the public may also acquire such rights is a doctrine which needs no support by citation of authority. It would not be hard to find numerous adjudications in support of the position. In a case which happens to have been cited for another purpose I have found some authority which would entirely justify, I think, the holding that the public have established by long, public and undisputed use the character of this improvement. The case to which I refer is *Cleveland* v. *Bag & Paper Co.* 72 Ohio St. 324 [74 N. E. Rep. 206; 106 Am. St. Rep. 613]. It was cited, perhaps, by counsel for the purpose of showing the acquisition by long use of a right by a private individual, but the principle of the case applies just as clearly in favor of the public where there has been a like uninterrupted and undisputed public use.

This improvement is said by the plaintiff to be partly natural and partly artificial, or, rather, that it is the deepening, widening, straightening and otherwise improving of a certain watercourse, partly natural and partly artificial, known as Bean Creek, etc. And the question presents itself as to what are the rights of the landowners along the line of such a watercourse, or landowners near to such watercourse and who drain toward it and ultimately into it.

Mason v. Commissioners.

It is urged with very much force and after industrious research among the authorities and unquestionably industrious examination of the facts involved in this case, that lands owned by the plaintiffs here and lying, some of them, miles from the proposed improvement, are not benefited within the meaning of the law so as to justify the imposition upon them of any part of the cost of the improvement. And it is also insisted as an incident to this claim, that these landowners have a right to discharge the surface water from their lands or to drain their lands by tiling in such wise as even to increase the flow of streams running into Bean Creek. It is said that where there is a natural watercourse— a living stream—the owners, in the first place, have a right to the natural drainage of their lands; that when they bought their lands they bought the lands with the right attached to them as an incident, and that the lower lands over which the waters might flow owe a service to the land above. Authority has been cited in support of the contention, and we think that some of it goes the full length of the claim made by counsel for plaintiff. But is this the law recognized in Ohio? Is it in harmony with the principles which have been established or suggested in the adjudications which have reached our court of last resort?

In a case much relied on and often quoted in the progress of the case, *Blue* v. *Wentz*, 54 Ohio St. 247 [43 N. E. Rep. 493], the Supreme Court held that certain lands were not liable to assessment for the cost of a ditch improvement, and in arriving at this conclusion laid down certain principles to which we may justly look for guidance in the determination of the rights of the present litigants. I read from page 247 (this language is in the syllabus):

"A lower tenement is under a natural servitude to a higher one to receive from it all the surface water, accumulating from falling rains and melting snows, or from natural springs, that naturally flow from it to and upon the lower one. This advantage of the higher tenement is a part of the property of the owner in it, and he is not indebted to the lower tenement therefor.

"In making an assessment on lands, benefited by artificial drainage, the extent of their watershed is not the proper rule, but the amount of surface water for which artificial drainage is required to make them cultivable, and the benefits that will accrue to the lands from such drainage. However much water may fall on them or arise from natural springs, if, by reason of their situation, they have adequate natural drainage therefor, they are not liable for the cost of artificial drainage to other lands."

Fulton County.

On pages 254 and 255 Judge Minshall, who announced the opinion for the court, very carefully guarded the rule which he was laying down to cover this class of cases. He says (using a portion of the language which we find embodied in the syllabus· and with other phraseology qualifying the doctrine):

"It is a principle of property well recognized in many of the states, and particularly in Ohio, that, where lands are situated as above supposed, the lower tenement is under what is called a natural servitude to receive such waters as flow to and upon it from a higher one, provided the industry of man has not been used to create the servitude. The right which the higher tenement has to require the lower one to receive from it the surface water that naturally drains to and upon it, is a right incident to the higher tenement, and a part of the property of the owner in it; and for any invasion of this right the law will afford him a remedy."

Several authorities are cited in support of the doctrine, among them Washburn, Easements, from which several quotations have been read by counsel for plaintiff.

Among the cases cited in support of the qualification of this doctrine is the case of *Butler* v. *Peck*, 16 Ohio St. 334 [88 Am. Dec. 452], holding that where upon the lands of B there is a marshy basin, from which, in times of high water, a portion of the water contained in the basin overflows its rim and naturally finds its way through a swale to and upon the lands of P, while the remaining portion of the water of the basin has no outlet, and is dissipated by evaporation, B cannot rightfully, by an artificial drain, conduct the water that has no natural outlet from the basin, and along said swale, so as to cause them to flow upon the lands of P to his damage.

Of course, there is no suggestion in that case as to riparian rights; that is, the right to increase the drainage from land by artificial means, so as to accelerate or increase the flow in a natural watercourse—a stream or river; a swale is mentioned in the decision. But after all, the general principle seems to be enunciated that a person has certain natural rights which he may maintain with regard to the discharge of water from his land and he is not liable for damages arising therefrom; but in this case as in the other, the doctrine seems to be qualified by the feature that when he increases or changes the natural course of events by his own industry, or by artificial means, then he becomes, to a certain extent, responsible for the results.

There is no claim in the present suit for damages. There is no suit brought against these upper landowners upon the theory that they have

Mason v. Commissioners.

damaged some one below, but it seems to be a conceded fact that, as to a number of persons who are said to be represented by the plaintiff, they have treated their lands artificially; that they have improved the drainage of their lands into the various tributaries to Bean Creek, and that they may thereby have increased or accelerated the flow of water in Bean Creek. Even if no more water flowed into Bean Creek by reason of this artificial drainage than flowed before, still the constant or more rapid accumulation of the waters by artificial drainage might cause such injurious results below as would call for the more rapid taking away of the water from the lower part of the stream. But it cannot be said that there will be no increase in the actual aggregate discharge of water during a season by reason of artificial drainage, because the water which is permitted to stand upon the surface of the lands will oftentimes by gradual evaporation pass off in another direction, instead of taking the course by rivulet, brooklet or creek, and so finding its way down to the larger streams.

The county commissioners deemed these upper lands benefited in greater or less degree by reason of the improvement of what we have called the Bean Creek Improvement and Chesterfield No. 2. It is not now altogether a question as to the extent to which the lands above have been artificially drained. If, by reason of the improvement of Bean Creek Improvement and Chesterfield No. 2, facility is given to the carrying away of water which may be brought down by future artificial drainage from above, we think that it is a matter which has to be taken into consideration, and we have the evidence of several witnesses who have apparently permitted Mr. Mason to represent them as their agent in the bringing of this suit, that they have actually tiled to a considerable extent their lands, both upland and lowland, which are said by the commissioners to be benefited and which are sought to be assessed. Mr. Ely so testified with regard to his land, Mr. James Randel as to his, Mr. E. H. Butler, Mr. A. M. Rogers, Mr. J. M. Keesy, Mr. W. M. Griffin, and perhaps others. This is but illustrative of the fact that many of these people deem it beneficial to their lands to drain them by artificial means; they are not satisfied to let the water flow away by merely natural means.

*Tootle* v. *Clifton*, 22 Ohio St. 247 [10 Am. Rep. 732], was a case of damage caused by the increased flow of water from upper land upon lower. It was held that the erection of an embankment upon one's own land, whereby the surface water on the adjoining land of another is prevented from flowing in its natural course, and caused to flow off in a different direction over the land of the latter, is a nuisance for which.

Fulton County.

an action may be maintained without showing any actual damage, and for which nominal damages, at least, may be recovered. In that case it was also held that title by prescription may be acquired by twenty-one years' adverse enjoyment of an easement. In Washburn's work on Easements I think there is, to a certain extent, a recognition of the same idea as to the increase of the flow of water by artificial means, and that it is not treated as a right to which protection will be afforded in the way claimed by counsel here.

In *Blue* v. *Wentz, supra,* the court lay down another rule exactly in line with the idea which I am endeavoring to express. On page '255, it is said:

"But if the lands of the plaintiff were subject to assessment, the rule adopted for making the apportionment, would still be open to objection. The benefits for which an assessment may be made, must relate to the betterment of the land for the purposes to which it may reasonably be put. It is difficult to see how this may be done by simply establishing the amount of its watershed. It is not the rain that falls on the land that determines its need of drainage—rain is necessary to its fertility—but it is the amount that falls on it for which artificial drainage is needed. This, from the natural situation of the land, may be little or nothing; and where it is nothing, there can be no ground for an assessment upon it for the purposes of drainage, however much rain may fall on it. The situation of lands with respect to drainage is a controlling factor in their value; the purchaser pays for this advantage in acquiring his property; and there is no principle of justice upon which others, less favorably situated, can compel him to contribute toward making their lands as good as his in the matter of drainage. Each owner has the right to enjoy his property with its advantages and he cannot be deprived of his advantages for the benefit of others upon some fictitious notion of benefits conferred."

There is no hint or suggestion in these Ohio cases that the criterion of assessability upon plaintiffs' lands is to find, if we can, whether the waters below in the improvement will back up upon the plaintiffs' lands. I find no suggestion of that kind. Counsel, however, seem to have entertained the view that if with perfect facility the plaintiffs may discharge the water from their lands by either natural or artificial means and if those waters cannot get back to them, that then they will not be benefited by any improvement below. We think that this is not a just rule nor the rule contemplated by the law. We think that if, by reason of the artificial improving of their own lands above, the plaintiffs have helped to make it necessary for the protection of the lands below to

Mason v. Commissioners.

make these contemplated improvements, then they should equitably help to pay for them. Surely, there is nothing unjust in that; if they have necessitated this expense, they should contribute to its payment. We are not inclined to think that by the present contemplated improvement or improvements, in time of flood or freshet the waters will be prevented from backing up upon the lands of the plaintiffs. We are entirely in harmony with the contention of the plaintiffs in that regard; but our judgment is, that that is not the determining principle here. The question is, will they be benefited by having conferred upon them the right to pour this water out from their lands in such wise that it will increase the flow in the improvement below? If they are assessed for this benefit or claimed benefit, it is by reason of this principle.

The case of *Winters* v. *Fangboner*, 30 O. C. C. 000, is, in this respect, quite analogous to the present case and the same conclusion was reached by the court.

There are some incidental matters involved here. I think that I have sufficiently discussed the two leading questions which have been presented to make clear the views entertained by the court. There are certain minor questions which, perhaps, should not be forgotten, and to which I will briefly refer.

It is claimed that the assessments made are inequitable; that they were not made upon a careful examination of each tract of land; that the commissioners did not go upon all of these premises and view them; and that, therefore, there ought to be a readjustment and reapportionment, if the assessments are permitted to stand at all. The burden is upon the plaintiff to show the inequity of the apportionment, and we are not satisfied that there is anything substantially inequitable in the principles upon which the commissioners have made the assessments. We do not think that the law requires them to go upon each individual tract of land. The law does require that they shall go along the line of the contemplated improvement; that they shall do it with a view of determining the necessity for it, and, of course, they should avail themselves of all proper means to make a just estimate of the benefit to each tract of land by reason of the contemplated improvement. This, we think, they have sought to do, and the presumption is, that their judgment is not at fault. We cannot presume error in this regard, and the law indeed does not permit us to disturb the assessments which they have made except for gross inequity or injustice. Such has not been disclosed to us. There is another matter to which I wish to refer before I end what I have to say, and that is the sort of doubtful position occupied by the plaintiff here in the representative capacity in which he

Fulton County.

brings this suit, and also the incidental question raised by the demurrer. Demurrers were filed by the auditor, treasurer and county commissioners, setting up different grounds of claimed insufficiency in the petition. One was, that there was a misjoinder of causes of action; another, that there was a misjoinder of plaintiffs. There is but one plaintiff in fact, although he seeks to sue for the benefit of all.

We think that there is much force in the contention of counsel for defendants, that, even if these three hundred or more persons were all nominal plaintiffs, after we got past the question of jurisdiction to establish the improvement, they are not precisely upon the same footing. The interests of the so-called plaintiffs are identical in claiming that this is a natural watercourse and that the commissioners have no right to make the improvement with regard to it which they seek to make. We have disposed of that question. But when it comes to an adjustment of the assessments, no one landowner is interested in having the assessment upon any other landowner decreased; he is interested in having the assessment upon his own land decreased, and that might very naturally result in an increase of the assessments upon others. Their rights do not lie along the same line; they are rather antagonistic than harmonious. It is to the financial interest of each landowner to place the assessment upon others rather than himself, if the burden is to be borne by assessment at all; and while each individual landowner might have a claim for a reduction of the assessment upon him, or to the setting of it aside altogether, we fail to see that he has any such interest in the assessments made upon others as would justify the joining of them in one action. Perhaps I ought not to say that we fail to see that this could be done. What I mean to say is, that we think, as I said at the outset of this particular branch of the inquiry, that there is much force in the contention of the defendants, and if we found it necessary to touch that question and if these persons were all plaintiffs, we should, perhaps, hold the demurrer upon the ground of misjoinder of claims well taken.

The real plaintiff is John R. Mason, suing in his own behalf and in behalf of others. So far as his land is concerned, his assessment is trivial, and he says himself that it is more a matter of principle than of money; it makes no difference whether the assessment is fifty cents or whether it is five dollars, or whether it is any other sum, he is contending for a principle rather than to be saved from an expenditure of money. Courts do not sit to decide abstractions; there are too many substantial matters constantly pressing upon the courts for their consideration to permit the spending of very much time in the considera-

-tion of abstract principles. It is true, however, that courts will decide questions of right and will maintain the right of a party to litigate, although they may render judgment for nominal damages, when going with the awarding of nominal damages is the settling of some principle which may be important to him in the future. A trespass case, for instance, will be maintained, where one·is trespassing upon land under claim of right or title, for which the courts will award nominal damages, although he may have done no mischief, because there is involved the determination of whether his right to enter and persist in entering can be maintained.

I will not tarry longer upon the question of the right of Mr. Mason to sue, except to make a mere reference to the case of *Quinlan* v. *Myers*, 29 Ohio St. 500, which holds, in substance, that if the nominal plaintiff, who sues not only in his own behalf but in behalf of others, fails to maintain his individual action, the whole case will· fall, and to refer to the statement made by Mr. Mason in evidence, that along in the year 1905, I think it was, he wanted the ditch improvement below him, extended to his place, or else that he should not be assessed, implying a concession that, if that improvement were extended to his land or upon his land, then the assessment might be made. I do not know that we should place very great weight upon such concession, but it bears upon his right to question the legality of these improvements; it is a question whether there has not been an acquiescence upon his part in some of these improvements that have been established in years past.

I have not time to refer to the other discussion incidental to these main questions, which I have treated somewhat briefly, perhaps hastily, and it suffices to say that it is the judgment of the court that this important improvement, which, we believe, from all the indications of the evidence, is one demanded by the public welfare and convenience, should not be stayed by any action of ours in disturbing the assessments which have been made upon these landowners. We think that the commissioners have sought to make a just distribution of the cost of the improvement. The setting aside of their first estimate and the adoption of an improvement costing little more than half the first, against which remonstrances had been filed, indicates an intention on their part to deal fairly with the people in this corner of the county. No intimation has been made, indeed, of any intentional injustice or favoritism. It is said, to be sure, that one of the commissioners owned land lying upon, or adjacent to, this improvement, subject to assessment; but, without comment upon authorities or making citations, it is enough to say that we do not think that a sufficient ground is thereby afforded for interference

Fulton County.

with the action of the commissioners or disturbance of these assessments. Indeed, after as careful an examination as we have been able to make of the whole field of inquiry, we have been unable to arrive at the conclusion that plaintiff's petition should be sustained.

Our judgment is, that neither Mr. Mason nor the other persons associated with him and whom he seeks to represent have any claim to the equitable interposition of the court to set aside the assessments which have been made upon them, and for this reason the finding of the court will be in favor of the defendants upon the motion which has been made for a judgment of dismissal of the plaintiff's petition.

**Haynes, J.,** concurs.

**PARKER, J.,** concurring.

Judge Haynes calls my attention to the fact that in the course of his opinion Judge Wildman did not mention the contention respecting the failure of the commissioners to find affirmatively and enter upon their docket that this improvement was conducive to the public health, convenience and welfare. If he mentioned the contention, he failed to mention certain sections of the statutes that we think bear upon that question. Under Rev. Stat. 4490, 4491 (Lan. 7674, 7675), we think that an error of that kind may be disregarded or, in effect, cured; that, where an application for injunction, like this, is made to the court, it is not necessarily fatal to the validity of the proceedings. I read a part of it:

"* * *. The court in which any such proceedings are begun shall allow parol proof that said improvement is necessary and will be conducive to the public health, convenience, or welfare, and that any steps required by law for any improvement have been substantially complied with, notwithstanding the record required to be kept by any board or officer."